BELLE L. S. BURNEY V. HENRY P. BURNEY ET AL.

No. A-844. Decided November 6, 1946.
Rehearing overruled December 4, 1946.
(197 S. W., 2d Series, 334.)

312

*Thompson, Walker, Smith & Shannon* and *Ogden K. Shannon,* all of Fort Worth, for petitioner.

It was error for the Court of Civil Appeals to hold that income lost to petitioner may be counted against her in determining her rights under the guaranty provisions of her husband's will, as she was under no obligation, under the will or at law, to invest her capital funds in order to avail herself of the benefits thereunder. It was error to hold that costs of insurance, repairs, etc., are proper expenses to be considered in determining the amount of her income. Hassell v. Frey, 131 Texas 578, 117 S. W. (2d) 413; Classen v. Freeman, 236 S. W. 979; Ellison v. Ellison, 164 S. W. (2d) 775.

*Kampmann & Burney,* of San Antonio, and *Samuels, Brown, Herman & Scott,* and *John M. Scott,* all of Fort Worth, for respondent.

In response to the above propositions respondents cite Heller v. Heller, 114 Texas 401, 269 S. W. 774; Haupt v. Michaelis, 231 S. W. 706; Cleveland v. Cleveland, 89 Texas 445, 35 S. W. 145.

MR. JUSTICE SLATTON delivered the opinion of the Court.

At the suit of Mrs. Belle L. S. Burney, surviving wife of I. H. Burney, deceased, the trial court and the Court of Civil Appeals at Ft. Worth construed the will of the decedent I. H. Burney. 192 S. W. (2d) 161. Mrs. Burney filed an application for writ of error which was granted.

She contends in point one that income lost by her as a result of her disposition of personal property may not be counted against her in determining her rights under the guaranty provision of the will of I. H. Burney, deceased.

In her second point it is insisted that she has no obligation under the will or at law to invest her capital funds in order to avail herself of the benefits contained in the guaranty.

In her third point she contends that costs of insurance, repairs, upkeep and taxes expended on the homestead of Mrs. Burney are proper items of expenses to be considered in determining her annual net income in relation to the income guaranty contained in the will.

Respondent contend that the will of I. H. Burney expressly establishes a definite and general plan for the disposition of the estate of testator, viz: to provide for the comfort of Mrs. Burney in guaranteeing her a net annual income of $12,000.00 from her interest in the community estate and from the trust property. That this plan was adopted for the purpose of vesting in his blood relatives his one-half of the community property.

Respondents insist for the same reasons contained in their first counter point and further say that Mrs. Burney cannot diminish the estate of I. H. Burney through her failure to invest the funds of her estate, thereby reducing her annual income so as to bring the guaranty provisions of the will into operation and finally to reduce the ultimate interests of the blood relatives of I. H. Burney, deceased.

The respondents contend that insurance, repairs, upkeep and taxes expended on the homestead of Mrs. Burney are not to be considered under the terms of the will as proper items of expense in the operation of the guaranty fixed by Mrs. Burney.

■ The application of familiar rules of law with respect to the construction of a will require the court to ascertain the inten-

tion of the testator from the language employed in the will as a whole. It is not permissible to accept detached portions thereof. Where one provision of a will cannot be readily reconciled with another the predominant provision as ascertained from the entire will should be construed with respect to the relation of one provision with the other. The predominant clause ought to prevail over a subsidiary clause unless the later clause clearly or expressly modifies the former.

A clearly expressed intention of the testator contained in one part of the will should not yield to a doubtful construction in any other portion thereof.

This Court cited with approval the following statement from Schuler on Wills, 5th Edition, Vol. 1, page 595, Sec. 476: "The general intent and particular intent being inconsistent, the latter must be sacrificed to the former." Heller v. Heller, 114 Texas 401, 269 S. W. 771, 774.

A careful study of the will of I. H. Burney discloses a clear intention or a definite plan to provide first for the comfort of his wife during her life and that his part of the community estate should thereafter go to his blood relatives. To allow a part of his will to be detached from the whole and give the isolated portion the construction insisted upon by petitioner would, in effect, destroy the plan or scheme so clearly expressed in the will of the testator. The plan clearly and explicitly appears in the language of the testator: Sec. 3c:

"Of course I really hope that my Executor-Trustees nor my wife ever have to resort to this guaranty for I actually believe her own income from her one-half interest in the community property and from the trust property will as at present continue to give her an annual net income of $12,000; and finally much more, but I realize this guaranty might become of crucial importance to her, and I know the total net income from all the community real property and the trust property, now much more than $12,000, can never fall below $12,000, without a collapse of all values or of our entire property system in which event the same result would follow if the property was at present worth a million dollars with income accordingly. But there must be mutuality of interest in and treatment of this guaranty. If my wife should sell a large portion of the property from which her income is derived, this would be inconsistent and hence whatever annual reduction of her income, if any, results from her sale of any of her interest in community real estate will

be reduced from the annual liability under this guaranty. In other words she will after such sale of real estate be conclusively considered as receiving at least an equal amount of income from the proceeds of such sale or sales as the annual net receipts theretofore from the properties sold."

It is readily seen that I. H. Burney, deceased, entertained the opinion that the income of Mrs. Burney which came from her one-half interest in the community property and from her trust property "will as at present continue to give her an annual net income of $12,000 and that only economic disaster would reduce the income therefrom to a lesser sum than the $12,000 guaranty."

After giving Mrs. Burney title to the trust property the will contains this provision:

"I desire however to note here that as hereinabove stated and recited my wife will doubtless make a will in accordance with the mutual plan hereinbefore mentioned whereby one-half of the residue of all our accumulations, including this trust property, shall finally go to my relatives and the other half to her relatives, all as she may direct."

The purpose of the trust which was created before the will was drawn was stated in the will to be:

"The fundamental meaning and purpose of said trust was and is to contribute to the protection of my wife in the event of honest but unfortunate management or happenings to our estate or more or less general property disaster and such design and purpose is entirely harmonious with the idea that finally half of the residue of our accumulations, including said trust property, may go to my wife's relatives and the other half to my relatives."

In the provision of the will strongly relied on by the petitioner the following appears:

"The dominant idea with me is to consider first the comfort and well-being of my beloved wife after I am gone which dominant idea has already been manifested in the Henry P. Burney trust."

The various provisions of the will, together with the references made to the trust property, show an intention of the testator first to provide a comfortable income to Mrs. Burney during her life of at least the sum of $12,000 per annum and finally that the residue of the community property and the trust prop-

erty would go one-half to the relatives of Mrs. Burney and the other one-half to the relatives of I. H. Burney, deceased. But the petitioner insists that a proper construction of paragraph 3c construed as a whole and in proper relation to the other provisions of the will clearly evidence an intention to charge Mrs. Burney only with the loss of income resulting from the sale of her interest in any community real estate and not to charge her with the loss of income which resulted from the sale of personal property. It is contended that the use of the phrase "But there must be mutuality of interest in the treatment of this guaranty" is a general statement by which the testator introduced the subject of the possible disposition of Mrs. Burney's property and the effect of such disposition on her rights under the guaranty. The same is claimed for the following phrase: "If my wife should sell a large portion of the property from which her income is derived this would be inconsistent."

The next above phrase is followed by the following "and hence whatever annual reductions of her income, if any, results from her sale of any of her interest in community real estate will be deducted from the annual liability under this guaranty."

Under these provisions the petitioner contends that the word "property" used in the first portion of the sentence must be construed as referring exclusively to real estate. If not, it must be construed simply as a part of a general statement which is controlled by the specific language employed in the remainder of the sentence wherein Mrs. Burney is charged only with the loss of income resulting from the disposition of real property.

The petitioner urges that the following clause fortifies the above construction. "In other words she will, after such sale of real estate, be conclusively considered as receiving at least an equal amount of income from the proceeds of such sale or sales as the annual net receipts theretofore from the properties sold."

We cannot agree to the construction given to the will by petitioner. The income of Mrs. Burney as contemplated by her husband was from her community estate and the Henry P. Burney trust property. The guaranty was provided as a precautionary protection of the welfare of Mrs. Burney. Notwithstanding the dominant idea of her protection the language of the will required of Mrs. Burney and others mutuality of interest and treatment of this guaranty. Following this specific language the testator says "if my wife shall sell a large portion of

the 'property' (not real estate), from which her income is derived this would be inconsistent." Then following this language a clear example is stated with reference to real estate. This does not exclude other inconsistencies. To give the will the construction of petitioner she would be free to dispose of all her personal property, the income of which amounted to 38% of her income when the will was written, and thereby diminish the interest of the blood relatives of I. H. Burney, deceased, to that extent each year during her life. This construction would destroy the general plan and scheme so clearly expressed in the will.

It is admitted by petitioner that a sale of real estate is inconsistent with the guaranty. She insists that she may give away her personal property to her relatives thereby diminishing her income, and that this would not be inconsistent with the guaranty although the effect would be the same. In other words, petitioner is obligated to respect the treatment of the requirement of mutuality contained in the guaranty with regard to real estate but with respect to her personity she may give the same to her relatives and thereby diminish the interest of the blood relatives of her deceased husband. Obviously this construction would not contribute to the well being of Mrs. Burney which was so dominent in the mind of her deceased husband. Neither is it consistent with the idea of testator's one-half interest in the community property finally descending to his blood relatives.

Mrs. Burney has the right to do as she pleases with her property but under the terms of the will she has not the right to diminish her estate upon which her annual income was in part derived and to invoke the terms of the guaranty so as to destroy or diminish the estate. granted the blood relatives of I. H. Burney, who are named in the will. The testator said: "But there must be mutuality of interest in the treatment of this guaranty." This command applies to Mrs. Burney and the two trustees as well. It was inserted for the guidance and protection of Mrs. Burney and other devisees named in the will.

There is no merit in the petitoner's second point for the same reasons above expressed. It is not consistent with the guaranty for Mrs. I. H. Burney to maintain on hand uninvested capital funds and still invoke the operation of the guaranty provisions of the will.

The formula contained in the will which defines net annual income would seem to conclusively show that I. H. Burney con-

templated an investment of her capital funds. This is further shown by the following excerpt of the will:

"For I actually believe her own income from her one-half interest in the community property and from the trust property will as at present continue to give her an annual net income of $12,000 and finally much more."

Her income could not be expected to increase without her capital funds being invested. Petitioner's two points simply mean that she may diminish her income first by giving her property away and second by refusing to invest her money and at the same time invoke the guaranty of her deceased husband's will. We are of the opinion that neither proposition can be properly sustained.

■ Insurance, repairs and taxes on the homestead of Mrs. Burney are not proper expenses to be considered in the application of the guaranty contained 'in the will. The term "property expenses reasonably necessary" as used in the will has reference to the production of income and not to the personal expenses of Mrs. Burney. It was not intended that the personal or living expenses of Mrs. Burney should be considered. The guaranty to her is $12,000.00 annual net income. That her personal expenses are of the same kind as those specifically mentioned concerning the "production of income" is not material. The will limits the enumerated expenses to those "incident to the production of income." These conclusions require an affirmance of the judgment of the Court of Civil Appeals. It is so ordered.

Opinion delivered November 6, 1946.

Rehearing overruled December 4, 1946.