In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-491 CV


____________________



ELIZABETH EISEN, Appellant



V.



CAPITAL ONE, NATIONAL ASSOCIATION f/k/a


HIBERNIA NATIONAL BANK, SUANNE EISEN LUBIN, AND DAN EISEN,


 Appellees 





On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-175,566






OPINION


 This is an appeal from a summary judgment in a declaratory judgment action which
sought construction of the will of Irving Eisen. Elizabeth Eisen raises one issue on appeal. 
We reverse and render.

Background


 Irving Eisen died on October 4, 1999. In a will executed on September 3,
1998, Eisen left his interest in his residence and his assets held in trust at Chase Bank of
Texas, N.A. (1) ("Chase Bank") to Chase Bank as trustee "for the benefit of my wife, Elizabeth
Eisen[.]" Under the terms of the trust, the trustee is to make installment payments to
Elizabeth of the net income from the trust estate. The will authorizes the trustee, "in its sole
and uncontrolled discretion," to 

 distribute directly to my wife or expend for her benefit such part or all of the
principal of the trust estate as may be found by the Trustee to be necessary or
desirable for my wife's health, maintenance and support in order to maintain
her in the standard of living to which she has become accustomed at the time
of my death to the extent advisable in the Trustee's discretion, considering the
size of the trust estate and the reasonably expected future needs of my wife
throughout her lifetime. Subject to my contractual obligations in the pre-marital agreement I entered into with Beth, my Trustee shall take into
consideration other funds conveniently available to my wife outside of this
trust. I have agreed in our pre-marital agreement, as amended, to provide
funds for the payment of the property taxes, maintenance and repair expenses,
utilities, and insurance costs on our home. It is my intent that such items are
permissible items for invasion of the principal of this trust in the event the
income is not sufficient.


The will further provides as follows:

 Upon the death of my wife, but in all events subject to the provisions of Article
VI hereof, the Trustee then acting shall divide, distribute and pay over all of
the remaining principal held in the trust at the time of my wife's death and all
income accruing thereafter to my children, Suanne and Dan, share and share
alike or all to the survivor of same. Provided, however, if either Suanne or
Dan shall predecease Beth but shall leave issue who survive her, then, but in
all events subject to the provisions of Article VI hereof, the issue of my
deceased child shall take and receive, per stirpes, the share of the trust which
. . . he or she would have received had he or she survived Beth. (emphasis
added)

Article VI of the will creates separate trusts for any of Eisen's grandchildren who are under
thirty years of age when their ownership interests vest. Article VI provides that "[e]ach
person for whom a separate trust is established under the provisions of this Article shall be
referred to herein as the "beneficiary[.]" Article IX, which contains the primary provision
at issue in this appeal, provides that "the beneficiary shall have the right to remove the
Trustee and to appoint a successor Trustee by giving at least sixty (60) days' prior written
notice to the Trustee. . . ."

 At some point after Eisen's death, disputes arose between Elizabeth and appellees, and
Elizabeth attempted to remove Hibernia as trustee. Elizabeth filed a declaratory judgment
action, in which she sought a declaration that "as the current income beneficiary of the trust,
[she] has the power under Article IX of the last will and testament of Irving M. Eisen to
exercise the right of removal [of the trustee] without the joinder or consent of either Suanne
Eisen Lubin or Dan Eisen, the remainder beneficiaries of that trust." Hibernia, Suanne, and
Dan filed a counterclaim for declaratory judgment, in which they sought a declaration that
"Suanne and Dan, along with Elizabeth, are each a 'beneficiary' under the trust[,]" and that
Elizabeth lacked the power or authority "to remove the trustee, [Hibernia], without the
joinder or consent of Suanne Eisen Lubin and Dan Eisen, the remainder beneficiaries of that
trust."

 Appellees filed a traditional motion for summary judgment, and the trial court granted
summary judgment in favor of appellees. In its order granting appellees' motion for
summary judgment, the trial court denied Elizabeth's request to remove the trustee. The trial
court found that the trust provisions in Eisen's will "unambiguously reserve the right of
trustee removal to the beneficiary which, by definition, would include . . . Suanne Eisen
Lubin and Dan Eisen[,]" and that Elizabeth lacked the power or authority to remove the
trustee "without the joinder and consent of Suanne Eisen Lubin and Dan Eisen, the remainder
beneficiaries of that trust." In a letter ruling issued before the judgment, the trial judge
explained that he based his decision upon the definitions of "beneficiary" and "remainder
beneficiary" contained in the Property Code, as well as the fact that Eisen's will used the
term "the beneficiary" in Article IX rather than referring specifically to Elizabeth (as "Beth"
or "my wife") as he had done in numerous other parts of the will. (2) See Tex. Prop. Code
Ann. § 116.002(2), (11) (Vernon Supp. 2006).

 Elizabeth then filed this appeal, in which her sole contention is that the trial court
erred in finding that the terms of Eisen's will do not give her the right to unilaterally remove
the trustee.

Standard of Review


 We review declaratory judgments under the same standards as other judgments and
decrees. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997). "We look to the
procedure used to resolve the issue at trial to determine the standard of review on appeal." 
City of Galveston v. Giles, 902 S.W.2d 167, 170 (Tex. App.--Houston [1st Dist.] 1995, no
writ). Since the trial court determined the declaratory judgment action through summary
judgment procedure, we review the propriety of the trial court's judgment under the same
standards applied to summary judgments. Lidawi v. Progressive County Mut. Ins. Co., 112
S.W.3d 725, 730 (Tex. App.--Houston [14th Dist.] 2003, no pet.); Tex. Civ. Prac. & Rem.
Code Ann. § 37.010. We review summary judgment orders de novo. Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). The party moving for
traditional summary judgment bears the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law. (3) Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).

Pertinent Law


 The determination of whether a will is ambiguous is a question of law, as is the proper
construction of a will. Harris v. Hines, 137 S.W.3d 898, 903 (Tex. App.--Texarkana 2004,
no pet.); Hurley v. Moody Nat'l Bank of Galveston, 98 S.W.3d 307, 310 (Tex. App.--Houston
[1st Dist.] 2003, no pet.). The intent of the testator is the paramount concern when
construing a will. Rosen v. Wells Fargo Bank Tex., N.A., 114 S.W.3d 145, 149 (Tex. App.--Austin 2003, no pet.). In ascertaining the testator's intent, we must limit ourselves to the
language contained within the four corners of the will. Id.; Steger v. Muenster Drilling Co., 
134 S.W.3d 359, 372 (Tex. App.--Fort Worth 2003, pet. denied). We must ascertain the
testator's intent by considering the entire will. Allen v. Talley, 949 S.W.2d 59, 60 (Tex.
App.--Eastland 1997, pet. denied); see also Wilkins v. Garza, 693 S.W.2d 553, 556 (Tex.
App.--San Antonio 1985, no writ). We must draw the intent from the will, not the will from
the intent. Rogers v. Ardella Veigel Inter Vivos Trust No. 2, 162 S.W.3d 281, 286 (Tex.
App.--Amarillo 2005, pet. denied).

 In construing a will, we must focus not on what the testator intended to write, but on
the meaning of the words the testator actually used. Id. We presume the testator intended
every word he used to have a meaning, and we must give common words their plain meaning
unless the context indicates they were used in another sense. Vinson v. Brown, 80 S.W.3d
221, 231 (Tex. App.--Austin 2002, no pet.); Johnson v. McLaughlin, 840 S.W.2d 668, 672
(Tex. App.--Austin 1992, no writ). When the testator uses the same words in different parts
of the will with reference to the same subject matter, we presume he intended the words to
have the same meaning unless the context indicates the testator used the words in a different
sense. Weathers v. Robertson, 331 S.W.2d 87, 90 (Tex. Civ. App.--Beaumont 1959, writ
ref'd n.r.e.); Ellis v. Bruce, 286 S.W.2d 645, 647 (Tex. Civ. App.--Eastland 1956, writ ref'd
n.r.e.). When the testator's intention is clearly expressed in one part of a will, that intent
"should not yield to a doubtful construction of any other portion thereof." Taylor v. First
Nat'l Bank of Wichita Falls, 207 S.W.2d 428, 431 (Tex. Civ. App.--Fort Worth 1948, no
writ) (citing Burney v. Burney, 145 Tex. 311, 197 S.W.2d 334 (1946)).

Application of the Law to the Facts


 We begin by considering Eisen's entire will and the language used therein to
determine his intent. See Rosen, 114 S.W.3d at 149; Allen, 949 S.W.2d at 60; Wilkins, 693
S.W.2d at 556. In Article I of the will, the testator states that he may refer to Elizabeth as
"my wife or as Beth." In creating the trust in Article IV, the will states that the trust is for
the benefit of "my wife, Elizabeth Eisen[.]" The will allows the trustee to expend "such part
or all of the principal" as the trustee deems necessary for Elizabeth's support. According to
the terms of the will, after Elizabeth's death, the trustee must distribute any remaining
principal and income to Suanne and Dan or their issue. The will does not provide for
continuation of the trust after Elizabeth's death.

 As previously discussed, Eisen's will defines the term "beneficiary" in Article VI as
"[e]ach person for whom a separate trust is established under the provisions of this
Article. . . ." Article VI addresses the contingency that Suanne and/or Dan might predecease
Eisen and leave heirs who would be under thirty years of age when their interests vested. 
Suanne and Dan both survived Eisen, so no trusts have been created pursuant to Article VI. 
However, trusts will be created pursuant to Article VI if Dan or Suanne dies before his or her
heirs reach age thirty. The will does not redefine the term "beneficiary" after Article VI.
Therefore, when Eisen again uses the term in reference to the same subject matter (i.e. trusts
created in the will) in Article IX, we presume that the term has the same meaning that Eisen
assigned to it in Article VI. See Weathers, 331 S.W.2d at 90; Ellis, 286 S.W.2d at 647. 
Furthermore, Article IV explicitly refers to the provisions of Article VI. Although Suanne
and Dan are remainder beneficiaries of the funds, if any, remaining in the trust upon
Elizabeth's death, the trust was not created for Suanne and Dan. Rather, Eisen established
the trust "for the benefit of my wife, Elizabeth Eisen. . .[,]" and Eisen clearly contemplated
that the entire trust (both income and principal) could be expended for Elizabeth's benefit,
at the trustee's sole discretion.

 We cannot agree with the trial court's application of the provisions of section 116.002
of the Property Code in construing what Eisen intended by his use of the term "beneficiary"
in Article IX. See Tex. Prop. Code Ann. § 116.002. First, nothing in section 116.002
indicates that the definitions contained therein are to be used for will construction. See id. 
Rather, section 116.002 simply defines "beneficiary" and "remainder beneficiary" when
those terms are used "[i]n this chapter." See id. Second, section 116.002 was enacted in
2003, and it did not become effective until January 1, 2004. See id. Eisen executed his will
in 1998; therefore, he could not have intended the particular meaning assigned to
"beneficiary" in § 116.002. See id.

 We also disagree with the trial court's reasoning that because Eisen did not refer
solely to "Elizabeth" or "my wife" in Article IX, as he did elsewhere in the will, he must
have intended to include others within the term "beneficiary" with respect to the trust created
in Article IV. The will provided for the potential creation of at least two trusts: one for
Elizabeth (with Suanne and Dan as remainder beneficiaries) and separate trusts for any heirs
of Suanne and Dan whose interests vest before they reach age thirty. If Eisen had intended
that each trust was to have more than one "beneficiary" with respect to the right to remove
the trustee, he could have used the plural form of the word ("beneficiaries") rather than the
singular ("beneficiary") in Article IX. See generally Rogers, 162 S.W.3d at 286; Rosen, 114
S.W.3d at 149; Allen, 949 S.W.2d at 60. Furthermore, viewing the will as a whole, we
conclude that Eisen used the term "beneficiary" in Article IX to allow for the possibility that
separate trusts would be created for Elizabeth as well as for the heirs of Suanne and Dan, if 
any, whose interests under the will vest before they reach age thirty. Therefore, we construe
the term "beneficiary" in Article IX to refer solely to Elizabeth with respect to the trust
created for her benefit in Article IV.

Conclusion


 We reverse the trial court's order and render judgment declaring that as the
beneficiary of the trust created under Article IV of Eisen's will, Elizabeth has the power and
authority pursuant to Article IX of the will to remove the trustee without the joinder or
consent of Suanne and Dan.

 REVERSED AND RENDERED.



 

 STEVE McKEITHEN

 Chief Justice


Submitted on May 3, 2007

Opinion Delivered August 2, 2007

Before McKeithen, C.J., Gaultney and Kreger, JJ.



DISSENTING OPINION


 The majority acknowledges that Suanne Eisen Lubin and Dan Eisen are remainder
beneficiaries of the funds in the trust and holds that the term "beneficiary" in the trust
document does not include them. I respectfully dissent.

 A "beneficiary" is a "person for whose benefit property is held in trust, regardless of
the nature of the interest." Tex. Prop. Code Ann. § 111.004(2) (Vernon 2007). An
"interest" is "any interest, whether legal or equitable or both, present or future, vested or
contingent, defeasible or indefeasible." Tex. Prop. Code Ann. § 111.004(6) (Vernon 2007). 
A "remainder beneficiary" is "a person entitled to the principal when an income interest
ends." Tex. Prop. Code Ann. § 116.002(11) (Vernon 2007). How a particular receipt or
expenditure is treated may affect the respective interests of the income and remainder
beneficiaries. Similarly, making discretionary payments out of the principal to an income
beneficiary will affect the relative interests of the beneficiaries. In this case, the will
provides the trustee with discretion to distribute the principal of this spendthrift trust to the
income beneficiary (Elizabeth Eisen) as "necessary or desirable for [her] health, maintenance
and support in order to maintain her in the standard of living to which she has become
accustomed at the time of my death to the extent advisable in the Trustee's discretion, 
considering the size of the trust estate and [Elizabeth's] reasonably expected future needs .
. . throughout her lifetime." The trust does not expressly state that Elizabeth, Suanne, or Dan
may remove the trustee. The instrument says the "beneficiary" may do so under certain
circumstances, which means all the beneficiaries must agree to change the trustee. It makes
no difference that the trustor used the singular of "beneficiary." We generally recognize that
the singular includes the plural and the plural includes the singular unless expressly provided
otherwise. See e.g. Holley v. Grigg, 65 S.W.3d 289, 294 (Tex. App.--Eastland 2001, no pet.). 
The trustor did not expressly provide otherwise, and his use of the term "beneficiary"
includes Suanne and Dan by definition. 

 The will does not define beneficiary differently. The majority refers to the definition
used in Article VI: "Each person for whom a separate trust is established under the
provisions of this Article shall be referred to herein as the 'beneficiary.'" Beneficiaries under
Article VI receive trust property only in the event Suanne or Dan predecease Elizabeth. 

 Elizabeth is a beneficiary of the Article IV trust. So are Suanne and Dan. Because
of their interests in the principal as granted by the trust, and the restriction on the trustee's
use of the principal for Elizabeth's "health, maintenance and support," the trust property is
not solely for Elizabeth's use and enjoyment during her life. If the trustor had intended her
to be the sole beneficiary of the trust, he would not have provided Suanne and Dan remainder
interests in the trust property, and he need not have provided for the possibility of Article VI
trusts. 

 The majority states the testator could not have intended the meaning assigned to
"beneficiary" in section 116.002, because section 116.002 did not exist at the time he
executed his will, and because the definitions of "beneficiary" and "remainder beneficiary"
only apply "when those terms are used" in Chapter 116. See Tex. Prop. Code Ann. §
116.002 (Vernon 2007). Section 116.002 did not change the law concerning whether a
remainder beneficiary is a beneficiary. See generally Tex. Prop. Code Ann. § 111.004(2),
(6). The will states that the trustee "shall have all the rights, powers, duties and discretions
conferred upon my Executor herein and conferred upon trustees by the Texas Trust Code, as
amended to the date of execution of this will, provided that in the event further amendments
may be made to such Code after the date of execution of the will, such amendments may
increase, but they shall not diminish, curtail or restrict the powers herein conferred and as
now conferred on the Trustee under the Texas Trust Code." The will anticipated that the
Trust Code and the amendments would be consulted in construing the rights, powers, duties,
and discretions of the trustee with respect to the beneficiaries. 

 The Trust Code in existence at the time of the execution of the will provided in part
that the trustee shall administer the trust with due regard for the interest of the income
beneficiaries and remaindermen, and defined "beneficiary" as a "person for whose benefit
property is held in trust, regardless of the nature of the interest." (4) Suanne and Dan are
beneficiaries of the trust and must be included in any decision to replace the trustee chosen
by the trustor. We should affirm the judgment of the trial court.

 ____________________________

 DAVID GAULTNEY

 Justice

Dissent Delivered 

August 2, 2007
1. Chase Bank is the predecessor of appellee Hibernia National Bank (currently known
as Capital One).
2. Section 111.004(2) of the Property Code defines "beneficiary" as "a person for
whose benefit property is held in trust, regardless of the nature of the interest." Tex. Prop.
Code Ann. § 111.004(2) (Vernon 2007). Section 116.002(2) provides that the term
"beneficiary" includes both "an income beneficiary and a remainder beneficiary." Id.
§ 116.002(2). Section 116.002(11) defines "remainder beneficiary" as "a person entitled to
receive principal when an income interest ends." Id. § 116.002(11).
3. In this case, the facts are undisputed. The parties' dispute involves a question of law. 

4. See Act of May 27, 1983, 68th Leg., R.S., ch. 567, § 2, sec. 111.004(2),(6), 1983 Tex. Gen.
Laws 3269, 3333-34; Act of May 27, 1983, 68th Leg., R.S., ch. 567, § 2, sec. 113.101, 1983 Tex.
Gen. Laws 3269, 3360.